### J. A. UTLEY COMPANY *v.* SAGINAW CIRCUIT JUDGE.

1. DISCOVERY—DOCUMENTS.

    *Documents*, as term is used in proceeding for review of order for discovery, is employed as including all papers and like tangibles hitherto made, such as witness statements, reports, maps, diagrams and photographs in the possession of defendant contractors, which were ordered to be submitted for inspection and copying by plaintiffs in tort suits for injuries received when new high-school construction collapsed (Court Rule No 40 [1945]).

2. SAME—EXEMPTION—WORK PRODUCT OF ATTORNEY.

    Documents which form a part of the "work product" of an attorney are exempt from discovery (Court Rule No 40 [1945]).

3. ATTORNEY AND CLIENT—WORK PRODUCT—PRIVILEGED COMMUNICATION.

    No privilege attaches to a document as the work product of an attorney, where the attorney, engaged by a client to prepare for litigation, simply directs or supervises the taking of statements and the doing of other preparatory work by employees of the client, since such employees are selected, hired, and paid by the client, not by the attorney, and they owe their primary allegiance to their employer.

4. SAME—WORK PRODUCT—DOCUMENTS PREPARED BY ATTORNEY'S EMPLOYEES.

    Documentary statements and reports forthcoming from an attorney's own employees or investigators, engineers, physicians, or adjusters that have been hired by him and to whom they report and by whom they are paid constitute the work product of the attorney just as if the work had been done by the attorney in person or by an employee of his office.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Discovery and Inspection § 86.
[2–7, 9] 17 Am Jur, Discovery and Inspection §§ 16, 28 and supplement.
    Statements of parties or witnesses as subject of pretrial or other disclosure, production, or inspection. 73 ALR2d 12.
[8] 17 Am Jur, Discovery and Inspection §§ 82, 83.
[10] 35 Am Jur, Mandamus § 393.

5. Same—Work Product—Privileged Communication—Principal
and Agent.

The professional relationship giving rise to the privilege of exemp-
tion from discovery accorded documents as the work product
of an attorney does not arise as to documents prepared by an
attorney or under his direction when he is an ordinary agent
'or employee of his principal, it being necessary to the privilege
that the relationship between the attorney and the principal
has to be the special and personal one the common law has
always protected.

6. Discovery—Documents Prepared by Agents—Attorney and
Client.

The statements taken by an insurer's adjusters, employees of their
respective employers whether they are or are not licensed at-
torneys, are not privileged from discovery as such adjusters
do not occupy the same relationship to their employer as the
attorney engaged to represent the principal in court, the latter
having a dual obligation, one to the client and the other to
the court of which he is an officer (Court Rule No 40 [1945]).

7. Same—Inspection of Documents Taken Incident to Collapse
of High School Construction—Work Product of Attorney.

Denial of discovery as to documents, hitherto prepared by de-
fendant contractors and their insurers, in actions for injuries
received by plaintiffs when new construction of a high school
building collapsed is accompanied by direction that respondent
circuit judge ascertain whether or not some document called up
for inspection is or is not in fact some part of an attorney's
work product exempt from discovery, also that the judge must
make formal discretionary determination of whether the denial
in whole or in part of production or inspection as sought will
unfairly prejudice the causes of the respective plaintiffs (Court
Rule No 40 [1945]).

8. Same—Burden of Showing Need.

A trial court always has to determine whether a party seeking
discovery of documents in the control of the opposite party
has made a showing of good cause justifying the issuance of
an order for discovery.

9. Same—Good Cause—Documents—Work Product.

Discovery of documents in possession of defendant contractors
and their insurers *held*, properly ordered as to documents not
the work product of defendants' attorneys that are exempt
from discovery, where plaintiffs had sustained injuries incident
to collapse of new high school construction, where the insurers,
their investigators and attorneys commenced immediate investi-

gations and defendants and their insurers did not deny factual showing of plaintiffs that good cause for discovery had been made (Court Rule No 40 [1945]).

10. COSTS—DISCOVERY.

No costs are allowed in mandamus proceeding to vacate order granting discovery as to documents in the possession of defendant contractors and their insurance carriers pertaining to construction of new high school which had collapsed and injured plaintiffs, where mandamus is denied with special directions as to future course to be pursued in the discovery permitted (Court Rule No 40 [1945]).

Original mandamus by J. A. Utley Company, a Michigan corporation, T & L Steel Erection Company, a Michigan corporation, and Gypsum Erectors, Inc., a Michigan corporation, against Fred J. Borchard, Saginaw County Circuit Judge, to compel him to vacate orders for discovery issued in pending personal injury actions arising out of a roof collapse during construction work. Submitted February 4, 1964. (Calendar No. 31, Docket No. 49,804.) Writ denied March 5, 1964.

*Heilman & Purcell (George M. Tunison,* of counsel) for plaintiff J. A. Utley Company.

*Stanton, Taylor, McGraw & Collison (John Davidson,* of counsel), for plaintiff T & L Steel Erection Company.

*O'Keefe, Braun, Kendrick & Finkbeiner (Russell A. Schafer,* of counsel), for plaintiff Gypsum Erectors, Inc.

*Peter F. Cicinelli* and *Eugene D. Mossner,* for defendant.

BLACK, J. This is an original petition for mandamus, designed to review an order for discovery. We directed that the respondent circuit judge show

cause. His return was duly filed. The petition and return raise squarely the issue of "work product" we are to consider in the light of distinctive facts.

The circuit court's order was entered in 1962, pursuant to then effective Court Rule No 40 (1945). It was common to 2 pending suits for negligence; each suit having arisen out of collapse of the roof of a then under-construction new high school building. The criticized portion of such order is division 3. It reads:

"3. Defendants will further submit to plaintiff for inspection and copying purposes the following: statements made by any of their employees, following said collapse, including statements made to the defendant companies and their agents, servants and insurance carriers, pertaining to said roof collapse; all statements of witnesses obtained in connection with said accident; all reports made by defendants which includes diagrams, maps and photographs relating to said accident; production of all defendants' rules and instructions pertaining to the construction of said high school; and all plans, drawings and other data in connection with the construction of the high school in question."[1]

[1] The showing made, in support of division 3 of the order for discovery, was not factually traversed by the sued defendants. It was and is claimed, with considerable vigor, that the discovery sought was "extremely broad and far more broad than was ever anticipated by the Michigan Court Rules." Key paragraph 5 of the petition for discovery reads:

"5. That many of the facts surrounding said accident are obscured and unknown; that numerous private hearings have been held and investigations conducted in connection with said school collapse which were not open to the public or to this plaintiff; that no declaration has as yet been filed in this cause of action for lack of specific information, much of which is in the knowledge and control of the defendants, their agents and employees; that in order to properly prepare a declaration in said cause in accordance with the statutes and court rules made and provided therefor, and in order to properly proceed with this cause of action, it is necessary for plaintiff to have an opportunity to make discovery, to take oral depositions, to submit written interrogatories and to inspect and examine reports, statements, papers and photographs, as more particularly hereinafter set forth, so that further light might be shed upon the circumstances surrounding this accident."

The present petitioners, defendants in the 2 damage suits, informatively advise:

"The insurance companies, their investigators and their attorneys commenced immediate investigations. The public authorities likewise made immediate inquiries into the fall and collapse of the roof portion.

"The plaintiff, shortly after the accident of July 10, 1961, filed his suit by summons on October 17, 1961.

"The plaintiff's motion for discovery was filed on November 22, 1961, and on January 26, 1962, the respondent granted the motion and entered his order on February 1, 1962.

"The only part of the discovery order objected to and which is the basis of this mandamus action is that which makes the defendants produce all the statements taken by the defendants, their agents, servants, employees or insurance carriers. This refers to statements of the parties, their agents, servants and employees and all other witnesses. The discovery order also requires further objectionable production of all of the defendant's reports, diagrams, maps, photographs, rules, regulations, and instructions pertaining to the construction of the high school, including all plans, drawings and other such data."

Since issuance of our order to show cause and prior to submission of this Utley Case, the related cases of *LaCroix* v. *Grand Trunk W. R. Co.,* 368 Mich 321, and *Wilson* v. *Saginaw Circuit Judge,* 370 Mich 404, have come to decision. Much of that which has been briefed by counsel is concluded by such decisions. Such decisions in mind, we proceed upon these presumably acceptable postulates:

The first is that the discovery of documents[2] only is involved, and that no question of depositional

2 "Documents," in this opinion, will be employed as including all papers and like tangibles which, under former Court Rule No 40, were subject to discovery. .The word includes, of course, the witness

practice is before us. The next is that a question of discovery of documents under former Rule No 40 is rightfully and exclusively up for consideration; also that, transitional difficulties considered, Judge Borchard intends to proceed (as to the 2 pending suits) under the discovery practice provided by former Rule No 40 rather than new and currently effective GCR 1963, 310 (he may of course do so; GCR 1963, 11.4). The last is that the only question remaining (after *LaCroix* and *Wilson*) is whether all or any portion of the documents called for by the quoted part of Judge Borchard's order are privileged, on account of the relation of attorney and client, from discovery as ordered. This brings us to grips with such remaining question.

Certainly, if such documents are thus privileged, they are exempt from discovery. The real question, then, is whether any of the documents called for by division 3 of the order form a part of the "work product" of counsel for the defendants in the 2 pending cases (they also are counsel for the respective insurers of such defendants). That question may have to be answered, finally by the respondent circuit judge, after it is determined upon further inquiry that some or any document thus called up for inspection and copying really is or is not a part of an attorney's "work product." What follows should aid due attainment of such answer.

No privilege arises when an attorney, engaged by an insurer to prepare for litigation, simply "directs" or "supervises" the taking of statements and the doing of other preparatory work *by employees of the insurer*. Such employees are selected, hired, and paid by the insurer, not by the attorney, and they owe primary allegiance to their employers. They are agents of the insurer rather than the attorney;

statements, reports, maps, diagrams and photographs that are called for by division 3 of Judge Borchard's order. .

their status for instant purposes being the same as that of Grand Trunk's agent when the latter took the statement discovered in *LaCroix*. On the other hand, when an attorney thus engaged—by an insurer prior to suit—actually hires and arranges to pay his own selected agent, say an independent adjusting firm or firm of engineers, or a private investigator, or (as in *Lindsay* v. *Lipson*, 367 Mich 1) a physician, to investigate and take statements, or to obtain and report to such hiring attorney desired preparative information, the documentary statements and reports thus forthcoming become a part of the hiring attorney's work product, just as if the work had been done by the attorney in person or by an employee of his office.

To determine in each like case whether a document sought to be discovered is privileged, we must bear in constant mind that the professional relationship does not arise when the attorney is an ordinary agent or employee of his principal; also that the privileged relationship has to be the special and personal one the common law has always protected. For definitions, see *People* v. *Pratt,* 133 Mich 125 (67 LRA 923), followed in *Lindsay, supra.*

To enjoy the privilege in the context of this case the document must be the attorney's own work product; not the product of work done by agents and employees owing primary allegiance to their employers rather than to the attorney. Such at least was the essence of our decision in the *Lindsay Case,* where the content of the doctor's report to the plaintiff's attorney was held privileged as against the defendants' demand for revelation thereof.

We perceive no difference between statements taken by an insurer's adjuster and a railroad's claim agent, whether the adjuster and agent, either or both, are or are not licensed attorneys. The point is, and we advert to it for emphasis, that the ad-

·juster or claim agent is an employee of the insurer or prospective defendant; whereas the engaged attorney is not. The engaged attorney could not be such an employee since his duties are dual; one to the client and the other to the court of which he is an officer. "Within his sphere, he is as independent as a judge; he has duties and obligations to the court as well as to his client, and he has powers entirely different from and superior to those of an ordinary agent." (7 Am Jur 2d, Attorneys at Law, § 3, p 45.) When his court tells him that his work product—to be privileged—must be his own, he acts accordingly and, incidentally, in the best interests of his client.

Concededly, these views are in conflict with those of some if not many, similarly vexed courts.[3] Too, the courts generally, as we perceive from recent annotations, are finding it difficult to decide whether, and for what reason or reasons, statements taken by employees of insurers and prospective defendants are privileged from discovery. Nonetheless, to avoid discrepant pretrial practice in the various circuits of Michigan, this Court of supervisory jurisdiction now must draw definite lines for guidance of trial counsel and trial judges. We do so here, making due note that the recent and exhaustive annotations appearing in 73 ALR2d 12, "Statements of parties or witnesses as subject of pretrial or other

---

[3] Consider, for instance, Judge Draper's introduction to the opposite result in *Grand Lake Drive In, Inc.*, v. *Superior Court of Alameda County*, 179 Cal App 2d 122, 127, 128 (3 Cal Reptr 621, 86 ALR2d 129, 134):

"Unfortunately, much of the attempt to extend privilege, before the discovery acts, arose from a desire to limit 'fishing expeditions.' While it has never been logically possible to have a broad attorney-client privilege for pretrial discovery, and a narrower one for actual trial, the feeling against pretrial disclosure of one's case is discernible in the arguments and to some extent in the decisions of earlier years. Now that piscatorial excursions are licensed by the discovery act, and open angling season established in many areas, some reorientation ·seems indicated."

disclosure, production, or inspection" and 86 ALR 2d 138, "Pretrial deposition—discovery of opinions of opponent's expert witnesses," have been considered with care prior to preparation of this opinion.

The writ applied for will be denied. We suggest, however, if such is desired by defense counsel in the pending cases, that the respondent judge should ascertain upon further inquiry whether some or any document called up for inspection by division 3 is or is not—in fact—some part of an attorney's "work product"; also that the judge should make formal determination of the ever-present question of discretion, that is, whether a denial in whole or in part of production and inspection as sought will unfairly prejudice the causes of the respective plaintiffs.

The question of privileged work product aside, it is always in order that the court inquire into an allegation of need for discovery of documents in lieu of investigative industry. True, for the pending lawsuits involved here, it may well be that the fact of seeming exclusive control, by the sued defendants and their insurers, of the documented information sought by plaintiffs, fully justifies the trial judge's order as it stands. But we are constrained to say generally that the suggested inquiry is due in every case where discovery of privileged or nonprivileged documents is moved and opposed. Courts should not move in any instance when the discoverer has not shown "good cause." Here the quoted showing by the plaintiffs, and the failure of the defendants and their insurers to factually deny such showing, justifies, so far at least, division 3 of Judge Borchard's order. That is the reason for our determination that no writ should issue.

Writ denied. No costs.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.